IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| VS. § | CRIMINAL NO. H-07-406 |
| § | |
| § | |
| MICHAEL D. KIM § | |
| § | |
| (CIVIL ACTION NO. 13-2586) § | |

**MEMORANDUM AND OPINION**

A jury convicted Michael Dong-Il Kim, a medical doctor, of conspiring to defraud Medicare by falsely billing for motorized wheelchairs and of committing health-care fraud by falsely billing Medicare for durable medical equipment. Kim also pleaded guilty to a separate indictment alleging that he had conspired to distribute controlled substances for nonmedical purposes by running a "pain mill" clinic that dispensed more than 1.7 million dosage units of hydrocodone over a two and one-half year period. Kim was sentenced to a total of 120 months in prison, consisting of 60 months for the drug conviction and 120 months for the health-care fraud conviction, to run concurrently. He did not appeal. The judgment became final on January 12, 2010. On August 28, 2013, Kim filed this motion to vacate his sentence under 28 U.S.C. § 2255. The government has moved to dismiss on the basis that the motion is untimely filed. (Docket Entry No. 193). Kim has responded. (Docket Entry No. 197).

Based on the motion and response, the record, and the applicable law, this court finds that the motion was untimely filed. The motion filed in Kim's criminal case, H-07-cr-406, is dismissed.

A final judgment of dismissal with prejudice is entered in the civil habeas case, H-13cv2586. The reasons are explained below.

## I.     Background

Kim's written plea agreement admitted to his conduct in the drug case. He admitted that from at least January 2005 through July 2008, he sold "drug cocktail" prescriptions to drug users and addicts for cash. The prescriptions were usually for hydrocodone, alprazolam and carisoprodol. The prescriptions were outside of Kim's professional practice and were not for a medical purpose. Kim's "patients" began arriving in the clinic parking lot to see Kim as early as 6:00 a.m. even though Kim routinely arrived later in the morning. Pharmacist Chul Choi, who worked at a pharmacy next door to Kim's medical clinic, filled prescriptions for Kim for over 1,766,517 hydrocodone tablets in a two-year period.

### A.     The Charges, Convictions, and Sentences

On September 26, 2007, Dr. Kim was indicted for 31 counts charging conspiracy to commit health-care fraud (false billing to Medicare for motorized wheelchairs) between April 2002 and October 2003 (count 1), in violation of 18 U.S.C. §371; health-care fraud (false billing to Medicare for durable medical equipment) (counts 2 through 18), in violation of 18 U.S.C. §1347; and money laundering (counts 19 through 31), in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957.

The health-care fraud indictment against Kim alleged that from approximately April 2002 to October, 2003, he conspired with Edem James Etuk and Pius James Ekiko to defraud Medicare and Medicaid. Dr. Kim's fraud conduct included prescribing powered or motorized wheelchairs for patients and certifying falsely that they had a medical necessity for the wheelchairs. To qualify for such a wheelchair, a patient must have a serious long-term medical or physical condition with such

severe weakness of the upper extremities as to be unable to operate a manual wheelchair. Dr. Kim prescribed the wheelchairs and supplied certificates of medical necessity to PMS Medical Equipment Distributors, a supply company owned by Edem James Etuk, or to Horizon Medical Supplies, owned by Pius James Ekiko. Dr. Kim allegedly required $200 in cash from these companies for each Medicare beneficiary he approved for a motorized wheelchair. Etuk and Ekiko billed Medicare for providing motorized wheelchairs but routinely provided scooters, which cost less than wheelchairs and are reimbursed by Medicare at a far lower amount. The indictment also alleged that Dr. Kim required every Medicare patient to have a bone-density test, for which Dr. Kim would bill Medicare, knowing that the tests were not medically necessary. The indictment also alleged Dr. Kim knowingly solicited and received money for referring Medicare and Medicaid patients, in violation of the Medicare anti-kickback statute.

Kim pleaded not guilty and was released on bond pending trial on September 27, 2007. (Docket Entry No. 6-10). On July 10, 2008, after a two-day bond revocation hearing on allegations that Kim had violated his bond conditions by unlawfully distributing controlled substances — including large amounts of hydrocodone — without medical purpose, the court revoked the bond.

Kim proceeded to trial on the health-care fraud charges. He was ably represented by Richard Kuniansky. After a 10-day trial, during which the United States dismissed the money-laundering counts, the jury returned a guilty verdict on all remaining counts on September 2, 2008. On October 22, 2008, the court granted Kim's motion to substitute Kent Schaffer, a well-known defense attorney, and granted Richard Kuniansky's motion to withdraw. (Docket Entry No. 77).

On December 9, 2009, the government filed a criminal information alleging that between January 2005 and July 2008, Kim had engaged in a criminal conspiracy to unlawfully distribute

controlled substances — including hydrocodone — not for a medical purpose. The information alleged that Kim had prescribed 1,766,517 dosage units of hydrocodone, a Schedule III controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Docket Entry No. 1 (H-09-666)). Kim waived indictment on December 15, 2009, and on December 17, 2009, he pleaded guilty to the criminal information. The plea agreement referred to both the health-care fraud case, H-07-cr-406, and the drug-distribution case, H-09-cr-666. Kim entered his plea under Rule 11(c)(1)(C). He waived his rights to appeal or collaterally attack his sentences in both cases except on grounds not present here. (Docket Entry No. 143).

The relevant provision of the plea agreement Kim signed stated as follows:

> 24.    Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal his convictions and the sentences imposed or the manner in which they were determined in both *United States v. Michael D. Kim*, H-09-666 and *United States v. Michael D. Kim*, H-07-409 on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his convictions or sentences by means of any post-conviction proceeding, **including but not limited to Title 28, U.S.C. §§ 1651, 2241 and 2255.**

Docket Entry No. 143, ¶24 (emphasis in original).

The plea agreement also contained the following provision:

> 25.    The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement. **If the defendant instructs his attorney to file a notice of appeal at the time sentence is imposed or at any time thereafter, the United States will seek specific performance of these provisions.**

D.E. 143, ¶25 (emphasis in original). In the plea agreement addendum, attached to the plea agreement, Kim also signed the following statement:

> I have consulted with my attorney and fully understand all my rights with respect to the Criminal Information pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. *I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms*.

(Docket Entry No. 143, p. 15) (emphasis added).

After a robust Rule 11 colloquy, which included Kim's statements, under oath in open court, that he was satisfied with his counsel's representation and that he fully understood the charges, the punishment, and the plea terms, the court accepted the plea and plea agreement. The court sentenced Kim to the agreed 60 months for the drug case (H-09-cr-666) and 120 months for the health-care fraud case (H-07-cr-406) to run concurrent, for a total of 120 months in custody, followed by three years of supervised release. (Docket Entries Nos. 142, 144). The sentence was below the guideline range and was based on accepting the parties' agreement and the court's application of the 18 U.S.C. § 3553(a) sentencing factors. The judgment was entered on December 29, 2009 and became final on January 12, 2010.

Kim did not appeal. This § 2255 motion was filed in August 2013. The government moved to dismiss on the basis that Kim filed it too late.

### III. The Motion to Dismiss

Kim's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which sets a one-year limitations period for filing federal habeas corpus petitions. The statute states:

> The limitations period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on
> collateral review; and
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §§ 2255(f). The limitations period began to run on January 12, 2010 and expired one year later.

Kim does not identify any facts that would trigger the application of 2255(f)(2), (3), or (4). His application is clearly untimely under § 2255(f)(1). Kim filed it over two years after the judgments in his criminal cases became final. Unless equitable tolling applies, Kim's motion is time-barred.

As a statute of limitations, AEDPA's filing deadline may be equitably tolled, but only in "rare and exceptional" circumstances. *See Fisher v. Johnson*, 174 F.3d 710, 711 (5th Cir. 1999). "[E]quitable tolling applies principally where the plaintiff is actively misled by the defendant about

the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotes and citations omitted). The applicant has the burden of proving that equitable tolling applies.

Kim acknowledges that "on the FACE of this Petition," his motion is untimely. (Docket Entry No. 188, p. 2). He asserts that he is entitled to equitable tolling because he "has pursued his rights diligently." (*Id.*). Kim's primary argument is that "extraordinary circumstances stood in his way and prevented TIMELY FILING." (*Id.*). The "extraordinary circumstances" he asserts are that this court did not construe correspondence he sent in 2010 attached as Exhibit A to his Motion to vacate, as an earlier-filed motion to vacate under § 2255. (*Id.*).

Exhibit A includes a copy of a document titled "Notice of Conditional Acceptance." Kim sent this document to the court and the Assistant United States Attorney on March 23, 2010. The "Notice" stated that Kim "accepts" the sentences imposed in cases H-07-cr-406 and H-09-cr-666 on December 17, 2009, on the "condition" that there is no "credible evidence" of the following:

> 1) The UNITED STATES OF AMERICA, the alleged plaintiff in the above referenced cases is not a legal fiction.
>
> 2) A legal fiction can make a claim against one of the people in Texas.
>
> 3) Michael D. Kim, the defendant in the above referenced cases is not one of the people in Texas.
>
> 4) Richard Kuniansky and Kent A. Schaffer, attorneys for the defendant in the above referenced cases were effective assistants of counsel by failing to explain the nature and cause of the accusation against the said defendant.
>
> 5) Attorneys for the defendant in the above referenced Cases did not fail to disclose to said defendant that their primary duty is to the Court and the public and not to their client, MICHAEL D. KIM.

6) Attorneys for the defendant in the above referenced Cases did not fail to disclose to said defendant that the United States District Court was proceeding under color of admiralty law in the above referenced Cases.

7) There is an international maritime contract to which defendant in the above referenced Cases is a party and that said defendant breached said contract.

8) The prosecutor, Albert A. Balboni and Judge Lee H. Rosenthal did not fraudulently act in concert and deprive Michael D. Kim of his God given right to Life, Liberty, and Property protected by the Bill of Rights of the Texas Constitution with reference to the above numbered Cases.

9) The prosecutor, Albert A. Balboni and Judge Lee Rosenthal did not intentionally, knowingly, voluntarily, and fraudulently act in concert and injure Michael D. Kim in the amount of 1.8 million dollars of lawful money of the United States pursuant to: 1 Stat 246, per day, per actor for stealing the Liberty and Pursuit of Happiness of Michael D. Kim, a man.

10) The prosecutor Albert A. Balboni and Judge Lee H. Rosenthal did not intentionally, knowingly, voluntarily, and fraudulently act in concert and steal property in the nature of lands, home, and retirement fund in the amount of one million, five hundred and twenty six thousand ($1,526,000) dollars of lawful money of the United States, 1 Stat 246, from Michael D. Kim.

11) Michael D. Kim will not be unlawfully incarcerated and deprived of his liberty when Albert A. Balboni and Lee H Rosenthal are in default.

(Docket Entry No. 188, pp. 15-16).

Kim's submission to the court stated that the judge and the AUSA had 10 days from the receipt of "this Conditional Acceptance" to:

> respond, on a point-by-point basis, via sworn affidavit, under your full commercial liability, signing under penalty of perjury that the facts contained therein are true, correct, complete, and not misleading. Mere declarations are an insufficient response, as

> declarations permit lying by omission and hearsay, which no honorable draft may contain. If an extension of time is needed to properly answer, please request it in writing. Failure to timely respond in the above prescribed manner will be your admission, agreement, confession, and stipulation to the following facts.

(Docket Entry No. 188, p. 16). The "following facts" affirmatively restated the items Kim listed earlier as matters he was not admitting to (for example, "1). The UNITED STATES OF AMERICA, the alleged plaintiff in the above referenced Cases is a legal fiction"). Kim's own "affidavit" included a section titled "Plain Statement of Facts" that affirmatively stated some of these items, including the following:

> 8) Richard Kuniansky and Kent A. Schaffer, attorneys for the defendant in the above referenced Cases were ineffective assistants of counsel by failing to explain the nature and cause of the accusation of the said defendant.
>
> 9) Attorneys for the defendant in the above referenced Cases did fail to disclose to said defendant that their primary duty is to the Court and the public and not, to their client, MICHAEL D. KIM.
>
> 10) Attorneys for the defendant in the above referenced Cases did fail to disclose to said defendant that the United States District Court was proceeding under color of admiralty law in the above referenced Cases.

(Docket Entry No. 188, p. 18).

Kim sent another letter to the court and to AUSA Balboni titled "NOTICE OF FAULT AND OPPORTUNITY TO CURE FAULT." This letter, sent in April 2010, stated that Kim was allowing the court and the AUSA additional time to respond to "cure" their "fault." (Docket Entry No. 165). In another letter, sent in May 2010, Kim informed the court and the AUSA that they had failed to respond to the "NOTICE OF CONDITIONAL ACCEPTANCE" in the allotted ten days "to respond and dispute said claims or agree, admit, confess, and stipulate to said claims." As a result, the court

and the AUSA "are now in default and are estopped from disputing my claims in any future administrative or other proceedings, "and "[b]y your default you have agreed, admitted, confessed, and stipulated to the facts stated in the NOTICE OF CONDITIONAL ACCEPTANCE you received by certified mail." (*Id.* at 21).

After this May 10, 2010 "Notice of Default" referring to "future administrative or other proceedings," Kim did not mention any challenges to his convictions or sentences again in any "other proceedings." He did continue to file various documents primarily related to his dissatisfaction with the forfeiture case arising from his conviction. (*See, e.g.,* Docket Entry No. 166, filed on September 3, 2010; Docket Entry No. 182, filed on May 14, 2013; Docket Entry No. 183, filed on June 4, 2013; Docket Entry No. 184, filed on June 10, 2013). These documents relating to the forfeiture case are similar to the documents purporting to place the court and AUSA in "default" in the criminal cases.

In his response to the government's motion to dismiss this § 2255 motion to vacate, Kim denies the allegations in the indictment and information, despite his conviction by the jury on the health-care fraud charges and his own guilty plea to the drug-distribution charges. He argues that the court and the AUSA have "agreed" to the "facts" "stipulated" by the failure to respond to the "Notice of Conditional Acceptance." Kim argues that the "stipulations" mean that the United States is a legal fiction that cannot make a claim against Kim, entitling him to be released as early as possible. He does not respond to the arguments showing that he has not met his burden of establishing that equitable tolling applies. (Docket Entry No. 197).

After sending the letters telling the court and the AUSA that they were in "default" for not responding to his "Notice of Conditional Acceptance" of his sentences and would be "estopped" from "disputing [his] claims in any future or other proceedings," on May11, 2010, Kim filed no

motions to contest his convictions or sentences or alleging ineffective assistance of counsel during the eight months remaining in the limitations period. He filed no habeas or other motion to vacate his convictions or sentences during the rest of 2010 or the next two years.

On August 5, 2013, Kim wrote to the Clerk of Court asking for a copy of the indictment and charging documents in cases H-07-cr-406 and H-09-cr-666 and "the Sentencing transcripts and trial transcripts in my case." Kim explained that these documents were "crucial to my habeas petition that I am preparing." (Docket Entry No. 186). He prepared, signed, and mailed the present § 2255 motion to vacate — Docket Entry No. 187, filed on September 3, 2013 — in late August 2013, over two and one-half years after limitations had expired.

Kim provides no explanation for the long delay in filing the motion. He does not explain why he failed to file the motion before January 12, 2011, when limitations expired. The motion is based on information Kim had during the trial, guilty plea, and sentencing. Kim's argument that the court should have "construed" his March 23, 2010 "Notice of Conditional Acceptance" as a timely motion to vacate his sentence under 28 U.S.C. §2255 is without basis. Kim did not take the steps that he himself described in August 2013 were needed to get the information and documents necessary to prepare a § 2255 motion to vacate. It was not until August 2013 that he sought and obtained from the Clerk's Office the transcripts and filings he asserted he needed to file his habeas motion. There is no indication that Kim's earlier "Notices" sent to the court and to the AUSA were motions to vacate under § 2255. Kim did not ask for habeas relief in these motions. Kim cannot show that he was "prevented . . . in some extraordinary way" from timely filing a habeas motion before the statute of limitations expired on January 12, 2011.

Kim has not demonstrated any rare or extraordinary circumstance to justify applying equitable tolling to extend limitations for over two-and-a-half years. Kim has not shown that he diligently pursued a habeas motion before limitations ended. He does not identify any obstacle preventing him from obtaining the documents and filing the habeas motion before January 2011. *See Fisher v. Johnson*, 174 F.3d 710, 716 (5th Cir. 1999) (holding that "equity does not require tolling" "absent a showing that [the petitioner] diligently pursued his application the remainder of the time [between the extraordinary circumstance and the filing deadline] and still could not complete it on time"). The letters and "Notices" Kim sent to the court and the AUSA between March and June 2010 were not a habeas motion. The court's "failure" to construe them as such did not explain or excuse Kim's failure to file such a motion before August 2013. *See Valverde v. Stinson*, 224 F.3d 129 at 134 (2nd Cir. 2000) ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.").

Kim's *pro se* status, and the bizarre nature of some of his arguments, do not show a basis for applying equitable tolling. Proceeding *pro se* is neither rare nor exceptional and does not justify equitable tolling. *United States v. Petty*, 530 F.3d 361, 364-65 (5th Cir. 2008); *Lookingbill v. Cockrell*, 293 F.3d 256, 264 n.14 (5th Cir. 2002). Lack of legal training, ignorance of the law, and unfamiliarity with the legal process do not justify applying equitable tolling. *See Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000); *see also Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).

The government's motion to dismiss is granted. The alternative motion for extension of time to file a summary judgment motion is moot.

## IV. Conclusion

The motion to dismiss is granted. Final judgment is entered in the civil habeas action, dismissing it with prejudice. The motion to dismiss the § 2255 motion to vacate in the criminal action is granted.

The showing necessary for a certificate of appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 429 U.S. 473, 483 (2000)). An applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000). When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Rudd v. Johnson,* 256 F.3d 317, 319 (5th Cir. 2001) (citing *Slack,* 529 U.S. at 484). Kim has not made the showing necessary for a COA.

SIGNED on March 5, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge